UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KINZIE MATHEWSON and DAMON MATHEWSON, | )<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | ) Cause No. 2:11-CV-456-RLM-PRC<br>) |
| CITY OF LAFAYETTE, INDIANA; LAFAYETTE POLICE DEPARTMENT; DON ROUCH, Chief of Police of the Lafayette Police Department in his official and individual capacities; and MATTHEW GARD, in his individual and official capacities as a Lafayette police officer, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants | ) |

OPINION and ORDER

This matter is before the court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the four defendants in this matter, the City of Lafayette, Indiana; the Lafayette Police Department; Chief of Police Don Rouch; and Officer Matthew Gard. Doc. No. 11. Plaintiffs Kinzie Mathewson and Damon Mathewson haven't opposed the motion and the time for doing so has expired (although an opposition isn't necessary; the plaintiffs can stand on their complaint. *See* J. Moore, MOORE'S FEDERAL PRACTICE § 12.34[1][a]).

The Mathewsons allege that, on the evening of December 10, 2009, the Lafayette police were chasing a fleeing vehicle when the fleeing suspect ran a red light and slammed into the Mathewsons' car. They claim that they suffered injuries and related damages. This action contains three counts: a tort claim; a

claim under 42 U.S.C. § 1983 that alleges Chief Rouch and Officer Gard violated the Mathewsons' Fourth and Fourteenth Amendment rights; and a claim under § 1983 that alleges the City, its police department, and Chief Rouch's polices regarding hiring, training, and supervision of police officers violated the Mathewsons' Fourth and Fourteenth Amendment rights.

Analysis of a § 1983 claim begins with determining whether the underlying right has been violated. Graham v. Connor, 490 U.S. 386, 393–394 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (internal quotation omitted)). The City has moved for dismissal pursuant to Rule 12(b)(6), asserting that the two claims under § 1983 can't stand because there wasn't a seizure for Fourth Amendment purposes and there was no behavior that shocks the conscience for Fourteenth Amendment purposes. If the court dismisses those two claims, the City has asked that the court not exercise supplemental jurisdiction over the supplemental tort claim and dismiss it without prejudice.

A.

The Fourth Amendment prohibits, among other things, unreasonable seizures. Before a court considers whether a given seizure is reasonable, it must decide whether there was a seizure for Fourth Amendment purposes. *See* United States v. Mendenhall, 446 U.S. 544, 553-554 (1980) (defining what constitutes a seizure for Fourth Amendment purposes). Police use of force to stop a fleeing

suspect can amount to a seizure. Tennessee v. Garner, 471 U.S. 1, 7 (1985) ("While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." (*citation omitted*)).

For police action amount to a seizure for Fourth Amendment purposes, more than just stopping a person's movement is required; the police must intend to stop the person's freedom of movement. Brower v. County of Inyo, 489 U.S. 593, 596–597 (1989).

> Thus, if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

Id. (emphasis in original).

The court of appeals echoed this language in Bublitz v. Cottey, 327 F.3d 485, 489 (7th Cir. 2003), a case very similar to the Mathewsons' claims. In that case, the police had deployed a spike strip to stop a fleeing suspect. The suspect hit the spike strip, lost control, and crashed into another car, killing two of its

3

three occupants. The court found that, even where the police intended to stop the suspect's car, intent does not transfer to the stopping of the innocent victim's car via the accident. Id. "The Bublitz family was simply not the intended object of the defendant officers' attempts to seize the fleeing James, so the Fourth Amendment is not implicated and cannot provide the basis for a § 1983 claim." Id.

The Mathewsons could be said to have been seized for Fourth Amendment purposes, then, only if the police intended to apply force to stop their movement and did apply that force in a way that stopped their movement. The facts as pleaded don't support that conclusion. In taking all well-pleaded allegations in the complaint as true and evaluating them in a light most favorable to the Mathewsons, Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010), there is no allegation or supported inference that the police intended to seize the Mathewsons by having the fleeing suspect vehicle crash into their vehicle. With no seizure, the underlying Fourth Amendment claim cannot stand and the § 1983 claim must be dismissed.

B.

The Mathewsons also allege a violation of their Fourteenth Amendment rights, but don't make clear how the facts of their claim tie into a Fourteenth Amendment claim. They might be citing the incorporation doctrine (i.e., Mapp v. Ohio, 367 U.S. 643, 655 (1961) and its progeny wherein the Supreme Court found that the rights guaranteed by the Fourth Amendment are enforceable against the

states via the Fourteenth Amendment). If the Mathewsons cited the Fourteenth Amendment's incorporation doctrine, there can't be a Fourteenth Amendment violation if there is no Fourth Amendment violation. On the other hand, the Mathewsons might be alleging that the car accident violated their Fourteenth Amendment rights by depriving them of liberty or property without due process.

If the Fourteenth Amendment claim is something other than incorporation, the Mathewsons haven't alleged enough facts to allow the court to infer how their Fourteenth Amendment rights were violated. Bell Atlantic v. Towmbly, 550 U.S. 544, 570 (2007), requires the plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." Id. Likewise, Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) asserts "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. The Mathewsons' claims either refer to the incorporation doctrine or they don't state an alternatively cognizable Fourteenth Amendment claim. In either case, the City of Lafayette, Officer Gard, and Chief Rouch are entitled to dismissal of the § 1983 claim that is based on a violation of the Fourteenth Amendment.

C.

In Count III,[1] the Mathewsons allege that Chief Rouch, the City, and the Police Department violated their Fourth and Fourteenth Amendment rights "through the policies or customs regarding hiring, training and supervision of police officers." Compl. at 6. To maintain a § 1983 claim on a Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), theory, the Mathewsons would have to show that the flawed policy or custom utilized by the police department caused the infliction of injury that § 1983 addresses. Since the complaint doesn't allege a Fourth or Fourteenth Amendment injury, it can't allege a Monell claim for a flawed departmental policy or custom leading to such an injury. Pasiewicz v. Lake County Forest Preserve Dist., 270 F.3d 520, 527 (7th Cir. 2001). This count must be dismissed.

D.

The defendants ask that the court not exercise supplemental jurisdiction over the remaining state law (tort) claim once the two § 1983 claims are dismissed. While 28 U.S.C. § 1367(a) creates supplemental jurisdiction for matters related to those the court has original jurisdiction over, § 1367(c)(3) allows courts to decline to exercise that supplemental jurisdiction once "the district court has dismissed all claims over which it has original jurisdiction." "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state

---

[1] The complaint incorrectly labels both the second and third count as "Count II," but, since this is the third count, the court refers to it as Count III.

6

supplemental claims whenever all federal claims have been dismissed prior to trial." Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999). The court of appeals has even said that there is a presumption, which "should not be lightly abandoned," against retaining supplemental jurisdiction over state law claims when the federal original jurisdiction claims are dismissed. Khan v. State Oil Co., 93 F.3d 1358, 1366 (7th Cir. 1996), *vacated on other grounds*, 522 U.S. 3 (1997). There being no reason to retain jurisdiction over the tort claim, it must be dismissed without prejudice.

E.

In conclusion, the Mathewsons' complaint does not show a violation of their rights under the Fourth or Fourteenth Amendments, so the two § 1983 claims (one for the accident directly and one Monell claim for departmental policies) are DISMISSED with prejudice. The court will not exercise supplemental jurisdiction over the remaining state law claim alleged in Count I; it is DISMISSED without prejudice.

SO ORDERED.

ENTERED:  March 5, 2012

/s/ Robert L. Miller, Jr.
Judge
United States District Court