UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| KINZIE MATHEWSON, *et al.*, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | CAUSE NO. 2:11-CV-456-RLM-PRC |
| | ) | |
| CITY OF LAFAYETTE INDIANA, *et al.*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

OPINION and ORDER

On March 5, 2012, the court granted a motion to dismiss filed by defendants City of Lafayette, Indiana, Lafayette Police Department, Chief of Police Don Rouch, and Officer Matthew Gard. The order noted that the plaintiffs Kinzie Mathewson and Damon Mathewson hadn't responded to the motion, but also noted that a response wasn't necessary and that a plaintiff can choose to stand on his pleadings in the face of a motion to dismiss.

The Mathewsons have moved the court to re-open and reconsider the matter under Federal Rule of Civil Procedure 60(b). The Mathewsons' counsel has shown that a clerical error led to a situation in which a response to Lafayette's motion to dismiss was prepared but never received by the court. This minor and inadvertent mistake is understandable and excusable and the court will reconsider the motion, factoring in the Mathewsons' response, as attached to the Rule 60(b) motion. Lafayette hasn't responded to the motion to

reconsider, although a response isn't necessary; the court can rely on the positions taken by Lafayette in its motion to dismiss.

Even considering the Mathewsons' memorandum in response to the motion to dismiss, the court denies the motion to reconsider and leaves the previous dismissal unchanged.

## A.

The Mathewsons don't dispute Lafayette's contention that the Fourth Amendment claims must be dismissed and that the Lafayette Police Department isn't an entity that can be sued separately from the City of Lafayette.

## B.

The Mathewsons have clarified their claim that they were deprived of their rights under the Fourteenth Amendment. In the March 5 opinion, the court noted that the Fourteenth Amendment claim might be either a claim of incorporation, in which the Fourth Amendment was incorporated against state actors (which wouldn't survive the analysis that there was no Fourth Amendment violation) or a standalone claim of a violation of substantive due process (which, the court said, wasn't articulated in the complaint with enough specificity to survive the pleading standard explained in Bell Atlantic v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)). The Mathewsons' response to the motion makes clear that they were

proceeding under a claim of denial of substantive due process and have provided the court with more specificity.

The Mathewsons rely heavily on <u>Frye v. Town of Akron</u>, 759 F. Supp. 1320 (N.D. Ind. 1991). In that case, this court found that a substantive due process claim could be brought when a plaintiff was an unintended victim of police force. The court had to consider whether a police officer forcing a fleeing motorcycle off the road and, as a result, killing the passenger, amounted to a denial of substantive due process (that is, violated the Fourteenth Amendment.) <u>Id.</u> at 1322. The court took issue with the defendant town's dismissal motion's contention that "the mere pursuit of a vehicle cannot rise to the level of recklessness required for a substantive due process violation." <u>Id.</u> at 1324-1325. The court reiterated its stance that "recklessness" was the standard being applied in analyzing Akron's motion to dismiss. "Taking the factual allegations of the plaintiffs' complaint as true, the court finds that it does not appear beyond doubt that plaintiffs will not be able to prove that Deputy Moore acted so recklessly that he deprived Karrie Darnell of her substantive due process rights." <u>Id.</u> at 1325. Relating this to the facts of their case, the Mathewsons ask the court to allow a jury to decide whether the actions of the Lafayette police similarly violated substantive due process.

Whatever the law might have appeared to be twenty years ago, the court can't apply the <u>Frye</u> standard of evaluating violations of the Fourteenth Amendment today. Instead, the applicable Fourteenth Amendment analysis centers on whether the Mathewsons can show that the conduct of the police

"shocked the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) ("for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience."). Further, "the constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." Id. at 848. This leads the court to move away from the Frye tort-based recklessness standard and seek an application of the Fourteenth Amendment shocks-the-conscience standard that would fit the facts of the conduct of the Lafayette police leading to the accident with the Mathewsons.

In County of Sacramento v. Lewis, the Supreme Court wrestled with two versions of shocks-the-conscience analysis. On one hand, in some cases, deliberate indifference to another's life and well-being shocked the conscience. For example, ignoring the medical needs of prisoners can rise to the level of deliberate indifference necessary to shock the conscience. County of Sacramento v. Lewis, 523 U.S. at 850. On the other hand, when circumstances leave no opportunity to be deliberately indifferent, that is, the events in question didn't include time to ignore another's plight but instead happened more quickly, only behavior that was intended to harm can be called shocking to the conscience. Id. at 854. Police pursuits most typically fall squarely into this second category. "Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no

intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Id. at 854.

Sacramento v. Lewis sets a high bar for a Fourteenth Amendment claim based on a police chase. The Fourteenth Amendment protects citizens not from all harms inflicted by governmental actors, but from only the most egregious official conduct. Bublitz v. Cottey, 327 F.3d 485, 490 (7th Cir. 2003) *quoting* Sacramento v. Lewis, 523 U.S. at 846. The police must have substantial culpability, which is a much greater standard than tort liability. Bublitz v. Cottey, 327 F.3d at 490. When the police acted in an emergency situation, their behavior can only shock the conscience if they intentionally inflicted a harm. Sacramento v. Lewis, 523 U.S. at 851 ("Thus, attention to the markedly different circumstances of normal pretrial custody and high-speed law enforcement chases shows why the deliberate indifference that shocks in the one case is less egregious in the other (even assuming that it makes sense to speak of indifference as deliberate in the case of sudden pursuit).").

As discussed in this court's earlier order, the court takes the Mathewsons' well-pleaded allegations as true for purposes of evaluating a motion to dismiss. Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010). The court's task is to examine the Mathewsons' claims for an allegation that the officers intended harm when they conducted the pursuit that led to the accident. "It is generally only deliberate action intended to harm another that is the type of conduct targeted by the Fourteenth Amendment: '[C]onduct

-5-

intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" Bublitz v. Cottey, 327 F.3d at 491, *quoting* Sacramento v. Lewis, 523 U.S. at 849.

The Mathewsons haven't pointed to an instance where their complaint alleges that Officer Gard (or any other member of the Lafayette Police Department) acted with the requisite intent to harm. The Mathewsons aver that Officer Gard began a pursuit of a fifteen-year old driver suspected of stealing a vehicle. The officer pursued the fleeing vehicle through Lafayette, where the driver disregarded a traffic signal and struck the Mathewsons' car. The Mathewsons point out that the situation was inherently dangerous, and an underage car thief speeding through a busy area at 9 p.m. while being chased by the police is hazardous to the suspect, the police, and bystanders such as the Mathewsons. Yet that isn't the standard; there must be an allegation that the officer acted with intent to harm. *See* Bublitz v. Cottey, 327 F.3d at 491 ("[I]n applying the rule from Lewis, we have held that, 'The *sine qua non* of liability in cases analogous to high-speed chases, therefore, is a purpose to cause harm." *quoting* Schaefer v. Goch, 153 F.3d 793, 798 (7th Cir. 1998)). There is no allegation of an intent to harm discernible in the Mathewsons' complaint. Thus, the complaint doesn't state a claim that Lafayette violated the Mathewsons' Fourteenth Amendment rights. The associated § 1983 claim must be dismissed.

C.

The Mathewsons have also brought a <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978), claim against the city for failure to train its employees. Such a claim arises when a city's failure to train or supervise its employees is itself a wrong that leads directly to the deprivation of someone's constitutional rights. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 386 (1989). In <u>City of Canton v. Harris</u>, the Supreme Court wrestled with whether the inadequacy of training could lead to "deliberate indifference to the rights of persons with whom the police come into contact." <u>Id.</u> at 388. The Mathewsons suggest that the court construe this as setting a standard of "deliberate indifference" when testing for <u>Monell</u> failure to train violations. This reading misapprehends the meaning of <u>City of Canton v. Harris</u>. The Court in <u>Harris</u> was tasked with analyzing whether Canton's policy failure led to a constitutional violation that was measured by the deliberate indifference standard because it alleged that the police allowed an arrestee to languish in their care without medical help. Thus, <u>City of Canton v. Harris</u> stands not for the concept that "deliberate indifference" is the standard for finding a <u>Monell</u> violation, but that <u>Monell</u> can be used to fault a city's failure to train that leads to a constitutional violation (as measured by whatever standard is appropriate for judging the particular alleged constitutional violation). This position is supported by the text of <u>City of Canton v. Harris</u>, which, in multiple places, calls for an analysis of whether the failure to train led to a constitutional violation.

The court has noted in two prior sections that the Mathewsons haven't alleged facts that, viewed in a light most favorable to them, could be understood to allege a violation of their Fourth or Fourteenth Amendment rights. Without an underlying violation, there can be no <u>Monell</u> violation for a failure of training leading to the deprivation of rights.

D.

The court's jurisdiction in this matter was based on federal question jurisdiction, 28 U.S.C. § 1331, because the Mathewsons alleged that their Fourth and Fourteenth Amendment rights were violated and brought this action under, among other things, 28 U.S.C. § 1983. The Mathewsons also included a count stemming from the same incident that alleged a violation of Indiana's tort laws and, in the earlier order, the court declined to exercise supplemental jurisdiction over the state law question and dismissed it without prejudice (without weighing the merits of the claim).

The Mathewsons have asked the court to rethink its holding on exercising supplemental jurisdiction over the remaining state law tort claim because they say that the statute of limitations has run and they would have no recourse in state court for their claims. The court can't accept this claim on its face; whether the Mathewsons would have recourse in an Indiana court is a question for Indiana courts. An extension of the statute of limitations is provided by 28 U.S.C. § 1367(d). Further, Indiana's Journey's Account Statute (Ind. Code 34-11-8-1) provides an extension of time in which to bring an action

in state court when it was dismissed for lack of jurisdiction if the plaintiff prosecuted the action non-negligently. *See, e.g.* <u>Al-Challah v. Barger Packaging</u>, 820 N.E.2d 670, 674 (Ind. Ct. App. 2005) ("The purpose of the Journey's Account Statute is to provide for continuation when a plaintiff fails to obtain a decision on the merits for some reason other than his own neglect and the statute of limitations expires while his suit is pending.").

Whether the Mathewsons qualify for an extension of time limits under either the federal statute or the state statute is a question for an Indiana court to determine in response to an affirmative defense. Nevertheless, in light of these two statutes and a lack of any assertion that they don't apply, this court can't say that the Mathewsons would have no forum in which to pursue their tort action or that fairness dictates the action remain in the federal court. The position of the court of appeals is quite clear: dismissal of state law claims in matters where the federal claims were dismissed is the accepted norm and federal courts shouldn't generally exercise jurisdiction over the supplemental state law claims. <u>Khan v. State Oil Co.</u>, 93 F.3d 1358, 1366 (7th Cir. 1996).

E.

In conclusion, the Mathewsons' motion to reconsider dismissal (Doc. No. 15) is DENIED. The court's prior order dismissing the federal claims with prejudice and the state law claim without prejudice stands unchanged.

SO ORDERED.

ENTERED: <u>May 30, 2012</u>

_____/s/ Robert L. Miller, Jr._____
Judge
United States District Court